The STATE of Texas, Appellant,

v.

Jason Wayne TARVIN, Appellee.

No. 10–97–347–CR.

Court of Appeals of Texas,
Waco.

July 15, 1998.

Rehearing Overruled Aug. 12, 1998.

Tim Curry, Criminal District Attorney, Chuck Mallin, Assistant Criminal District Attorney, Chief of Appellate Division, John A. Stride, Robert Martinez, Sheila Wynn, Assistant Criminal District Attorneys, Fort Worth, for appellant.

Patrick T. Curran, Bailey & Galyen, Bedford, appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Jason Wayne Tarvin was charged with the misdemeanor offense of driving while intoxicated. See TEX. PEN.CODE ANN. § 49.04 (Vernon 1994 and Supp.1998). Tarvin filed a motion to suppress the evidence gathered after he was stopped, which the court granted. The State appeals, presenting nine issues for our review.[1] Applying the standard for review set out in *Guzman v. State*, we will affirm the judgment.

### FACTS

The sparse facts indicate that on June 8, 1996 around 2:00 a.m., Officer Diron Hill followed Tarvin and observed him drift to the right side of a two lane road causing his tires

---

1. At oral argument, the State withdrew its "Community Caretaking Function" argument because it was not raised in the trial court. *See State v. Mercado,* 972 S.W.2d 75 (Tex.Crim.App.1998).

to go "over" the solid white line at the right-hand side of the road on two or three occasions.[2] Hill activated his overhead emergency lights, and Tarvin pulled over in response. There is no evidence regarding what followed.

### Standard of Review

In *Guzman v. State*, the Court of Criminal Appeals clarified the standard of review for appellate courts when deciding mixed questions of law and fact[3] such as "reasonable suspicion" and "probable cause":

> [A]s a general rule, the appellate courts ... should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor [citation omitted]. The appellate courts ... should afford the same amount of deference to trial court rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review de novo "mixed questions of law and fact" not falling within this category.

*Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim.App.1997).[4] Thus, when the issue to be determined on appeal is whether an officer had probable cause to seize a suspect, "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Id.* at 87. Because the issue in this case does not involve a disagreement about the facts or credibility of a witness, but rather whether the officer had probable cause/reasonable suspicion to stop Tarvin, we review that issue as a "mixed question of law and fact" de novo, affording

total deference to the trial court's determination of the historical facts. *Id.* at 87–89.

### ISSUE PRESENTED

The State presents nine issues for review, combining them into a single argument. We will address them likewise. The State's position on appeal can be summarized into two complaints: (1) the trial court abused its discretion when it made its findings of fact; and (2) the trial court improperly applied the law to the facts. As set out above, we will afford total deference to the trial court with regard to the historical facts (assuming those facts are supported by the record), and we will review application of the law to the facts de novo. *Id.*

### Findings of Fact

The court found that Tarvin "doesn't weave out of a lane, he's within a lane. Driving a car, in and of itself, has to be—I mean, is a controlled weaving...." The record contains evidence that Tarvin either drove on or over the right-hand white line. There is no evidence that he ever drove into another lane of traffic or did more than go "a little bit worse than over" the white line. When asked whether Tarvin's tires ever actually crossed entirely over the white line, Hill stated that on two occasions it was "a little bit worse than over," but stated that he couldn't give an exact measurement. The terms "cross" and "over" were never clarified, but it is clear that the dispute regarded the white line on the outside of the road, and Tarvin never came near the on-coming lane of traffic. The court's finding that Tarvin never left his lane of traffic is supported by the record as that phrase could rationally be defined.

The court indicated that significant research was done to determine whether Tar-

---

**2.** It is unclear from the testimony whether the vehicle touched, drove on, or crossed completely over the white line.

**3.** The "mixed question" in *Guzman* was whether the officer had probable cause to conduct a search.

**4.** *See also Ornelas v. United States*, 517 U.S. 690, 697–700, 116 S.Ct. 1657, 1662–63, 134 L.Ed.2d 911, 920 (1996) ("[T]he legal rules for probable

cause and reasonable suspicion acquire content through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles.") In *Guzman*, the Court of Criminal Appeals expressly overruled *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim.App.1996); *State v. Carter*, 915 S.W.2d 501 (Tex.Crim.App.1996); and *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992). *Guzman*, 955 S.W.2d at 90.

vin's actions constituted weaving in violation of an ordinance. The court asked for a copy of the ordinance which Tarvin supposedly violated, but the State never came forward with such an ordinance. We find that the court's determination that touching the right-hand white line does not constitute weaving out of one's lane of traffic is supported by the record. We will not disturb the findings of fact. *Id.* Furthermore, we do not find that the court "ignored" the time of night, distance of travel, or proximity to a night club in making its findings, as the State contends. Nevertheless, it is irrelevant whether the court considered these factors or not. We will consider them as part of the "totality of the circumstances" in our de novo review.

**Application of Law to Facts**

 Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *State v. Sailo,* 910 S.W.2d 184, 187 (Tex.App.—Fort Worth 1995, pet. ref'd). To justify the intrusion, the officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App. 1983). The officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication the activity is related to a crime. *Id; Wright v. State,* 959 S.W.2d 355, 356–57 (Tex.App.—Austin 1998, no pet. h.).

 The State argues that Tarvin's weaving provided a reasonable suspicion to conduct an investigative stop. We note that Hill never testified that he was conducting an investigatory stop, nor did he testify to suspecting any criminal activity other than weaving out of the lane. In other cases where a stop was justified in part because of

weaving, the activity involved something else, *i.e.,* going into another lane of traffic, high rates of speed, or erratic speed changes.[5] Hill testified that he did not observe any other driving infractions. The evidence shows that Tarvin never went into another lane of traffic, nor did he have difficulty maintaining a safe speed. Hill testified that he stopped Tarvin because his vehicle crossed over the white line. He testified that no other traffic violations occurred, that he did not observe any other weaving, and that he noticed "nothing else unusual" about Tarvin's driving. We do not find that Tarvin's driving provided a reasonable suspicion of criminal activity. Although mere weaving in one's own lane of traffic can justify an investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity, there is nothing in the record to show that Hill believed any of the above to be the case.

 The State argues that because Tarvin's weaving constituted a traffic offense, a temporary detention was justified. As mentioned earlier, the court requested a copy of any law or ordinance which Tarvin may have violated but the State did not comply. On appeal, the State argues that Tarvin's weaving was a violation of Section 545.060 of the Transportation Code, which reads in part, "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 1998). The evidence does not support a finding that Hill had a reasonable belief that Tarvin violated this provision of the Transportation Code.

Finding no reasonable suspicion for a detention and further finding no evidence of a traffic violation, we overrule all nine issues. The judgment is affirmed.

---

5. For example, *see Held v. State,* 948 S.W.2d 45, 51 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd); *Taylor v. State,* 916 S.W.2d 680, 681–82

(Tex.App.—Waco 1996, pet. ref'd); and *Fox v. State,* 900 S.W.2d 345, 347 (Tex.App.—Fort Worth 1995, pet. dism'd).